# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Michael Darrin Isham,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-16-2918-PHX-JAT (JFM)

**Report & Recommendation
on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Red Rock Correctional Center at Eloy, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 29, 2016 (Doc. 1). On December 9, 2016 Respondents filed their Response (Doc. 14). Petitioner filed a Reply on January 6, 2017 (Doc. 16).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background as follows:

> Officers Mesquita and Happeny sat in a marked patrol car around midnight, blocking traffic near an accident site. A car driven by Isham drove directly toward them and made an evasive turn to avoid a collision. Officer Mesquita approached Isham, who was laughing and smiling with his car radio "blaring." The officer asked Isham three times to turn off the engine before he complied. Isham had bloodshot, watery eyes and smelled of alcohol, though he denied consuming drugs or alcohol that evening.

1

> When the officer initiated an arrest, Isham asked why he was being arrested. Isham then reached toward the middle of his body and pulled a gun, which he raised toward Officer Mesquita. Officer Mesquita delivered "fist strikes" to Isham's face, causing Isham to drop the gun. Isham broke free and ran.
> Officer Mesquita chased and tackled Isham. During the ensuing struggle, Officer Mesquita was "hit by elbows, flailing hands." A second officer assisted, but the struggle continued, and Isham ignored officers' commands to stop resisting. A third officer intervened before Isham could be handcuffed. The gun was impounded.

(Exhibit E, Mem. Dec. at ¶¶ 2-4.) (Exhibits to the Answer, Doc. 14, are referenced herein as "Exhibit ___.")

B. **PROCEEDINGS AT TRIAL**

Petitioner was charged with aggravated assault (Officer Mesquita), aggravated assault (Officer Mesquita), aggravated assault (Officer Happeny), resisting arrest, and misconduct involving weapons. (Exhibit A, Indictment.) The State alleged multiple aggravating factors for purposes of sentence enhancement. (Exhibit E, Mem. Dec. at ¶ 5.)

Petitioner proceeded to trial and was convicted on the charges of aggravated assault against Officer Mesquita and resisting arrest. The jury was unable to reach a verdict on the remaining counts. (*Id.* at ¶ 6; Exhibit B, M.E. 6/6/11.)

Petitioner returned to trial on the remaining counts, stipulated that he was a prohibited possessor and that his arrest was lawful, and was convicted on the remaining counts. The jury also concluded that the aggravating factors had been proven. (Exhibit E, Mem. Dec. at ¶ 7; Exhibit C, M.E. 9/21/11.)

Petitioner was sentenced to an aggravated term of fifteen years, and presumptive terms of 1.5, 1.5, 1, and 2.5 years on the remaining counts, all to run concurrently. (Exhibit D, Sentence.)

C. **PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal. Counsel was appointed, but was unable to find an issue for review, and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967)

and related state authorities. Petitioner subsequently filed a supplemental brief, raising various issues.[1] The Arizona Court of Appeals struggled to comprehend Petitioner's brief ("his briefing lacks clarity, support or context"), but identified challenges to a stipulation that his arrest was lawful, which it identified as an assertion of ineffective assistance of counsel, and threatened use of prior convictions as impeachment which resulted in his not testifying at trial. (Exhibit E, Mem. Dec. at ¶ 14, and 10-13.) The court affirmed Petitioner's convictions and sentences, but *sua sponte* granted Petitioner an extension of time to file a *pro per* motion for reconsideration or petition for review. (*Id.* at ¶ 15.)

Petitioner sought review by the Arizona Supreme Court on December 31, 2012, which was denied on April 29, 2013.[2] (Reply, Doc. 16, Exhibit AC, Petition for Review; Exhibit E, Mandate; Petition, Doc. 1 at 9; and Answer, Doc. 14 at 4.)

### D. PROCEEDINGS ON POST-CONVICTION RELIEF

Almost two years later, on March 3, 2015, Petitioner commenced a post-conviction relief proceeding by filing his Notice of Post-Conviction Relief (Exhibit H), which is dated January 30, 2015. Petition subsequently submitted a string of filings, including a "Deferral Application," an "Affidavit," a "Petition for Review of Special Action Decision of the Court of Appeals," and a motion for recusal.[3] (Exhibit I, M.E. 6/9/15 at 1.) The PCR court construed the PCR notice and affidavit as Petitioner's first

---

[1] Respondents have not provided a copy of Petitioner's supplemental brief. *See* Rule 5(d), Rules Governing Section 2254 Cases (mandating provision of any appellate brief with answer). Because the undersigned ultimately concludes the Petition must be dismissed as untimely, and the contents of the appellate brief are not relevant to that determination, supplementation of the record has not been ordered.

[2] Respondents have not provided copies of any records related to this filing, other than the Mandate (Exhibit E) by the Arizona Court of Appeals. Because the records provided reflect the essential facts, *i.e.* the dates of the filing and conclusion, the undersigned has not ordered supplementation of the record.

[3] Respondents have not provided copies of any of these filings. Because the records provided reflect the essential facts, *i.e.* the dates of the filing and conclusion, the undersigned has not ordered supplementation of the record.

3

Rule 32 proceeding, and concluded that it was untimely by more than 19 months. (*Id.*)

Petitioner did not seek further review, and argues he did not do so because he has been unable to obtain the videotape evidence underlying his claim. (Petition, Doc. 1 at 5.)

### E. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 29, 2016 (Doc. 1). His Petition includes a certification that he placed it in the prison mail system on August 25, 2016. (*Id.* at 11.) Petitioner's Petition asserts the following a single ground for relief:

> He claims that the prosecutor has refused to disclose a videotape that would exonerate Petitioner and that Petitioner's counsel has failed to request the videotape. Petitioner asserts that this violates his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, as well as his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

(Order 9/7/16, Doc. 5 at 2.)

**Response** - On December 9, 2016, Respondents filed their "Limited Answer" (Doc. 14). Respondents argue that the Petition is untimely and Petitioner has procedurally defaulted his state remedies on his claim.

**Reply** – On March 3, Petitioner filed a Reply (Doc. 16). In addition to arguing the merits of his claims, construed liberally, Petitioner argues that: (1) he filed an earlier federal proceeding in CV-13-8126-PCT-JAT (JFM) which was dismissed in part and granted in part (*id.* at 6); (2) he has properly exhausted his state remedies (*id.* at 7); (3) he is actually innocence based on his videotape evidence (*id.* at 9); (4) any failure to exhaust should be excused because of the intervening dismissal of his prior federal habeas (*id.* at 19); and (5) he has been diligent in trying to obtain the videotape evidence (*id.* at 22).

### III. APPLICATION OF LAW TO FACTS
### A. TIMELINESS
#### 1. One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-

Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2.  Commencement of Limitations Period**

**a)  Conviction Final**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4]

Here, Petitioner's direct appeal remained pending through April 29, 2013 when the Arizona Supreme Court denied his Petition for Review. (Exhibit E, Mandate.)

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999). The rules of the Supreme Court of the United States, requires that a petition for a writ of certiorari be filed "within 90 days after entry of the order denying discretionary review." U.S.S.Ct. R. 13(1). Accordingly, because Petitioner did not file a petition for a writ of certiorari, his conviction became final on Monday, July 29, 2013, 90 days after the Arizona Supreme Court denied review.

**b)  Newly Discovered Factual Predicates**

Petitioner generally contends that the videotapes that he argues were suppressed

---

[4] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

by the prosecution qualify as newly discovered evidence.

Although the conclusion of direct review normally marks the beginning of the statutory one year, section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Here, however, Petitioner has been aware of the factual predicate of his claim since July 2, 2012 when the disputed videotape was discovered. (Petition, Doc. 1 at 6.) This was prior to the normal commencement of his habeas limitations period, and thus would not extend his limitations period.

Petitioner does make various assertions about his troubles in attempting to obtain copies of the videotapes since then. Petitioner has not produced the videotape, or even described its contents. Petitioner's Petition requests as relief the production of the videotape. (Petition, Doc. 1 at 11.) However, Petitioner has produced documents asserting that as of October 15, 2015, the videotape had been destroyed. (Reply, Doc. 16, Exhibit AJ, Inmate Informal Complaint Response 10/15/15.)

But the tapes themselves would be the evidence to support the claim, not the "factual predicate" of his claim. *See Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir.1998) (receipt of trial counsel's affidavit irrelevant where knowledge of facts supporting claim of ineffectiveness previously known to defendant). It is true that in *Quezada v. Scribner*, 611 F.3d 1165, 1168 (9th Cir. 2010), the Ninth Circuit found that the factual predicate of a *Brady* claim did not accrue until the petitioner discovered what he suspected - - that the informant had been paid by the government. But here, Petitioner did not merely suspect the existence of the purportedly suppressed evidence, but knew that the disputed videotape existed as of July 2, 2012. To the extent that Petitioner would argue that he merely suspected the contents of the videotape and thus his claim will not accrue until he actually obtains the tape, the purported nature of the videotape (*i.e.* exonerating Petitioner) would have been known to Petitioner from the beginning, assuming Petitioner did not commit the offenses of which he was convicted. Likewise,

the factual predicate of Petitioner's claim regarding counsel's ineffectiveness in not requesting the videotapes, was discovered when Petitioner learned of the existence of the purportedly suppressed videotape.

The exculpatory nature of the videotape has not been suggested by Petitioner. The only references to a video recording found by the undersigned in the police reports relates to a digital audio/video recording of a post-arrest interview of Petitioner by Officer Kulaweic in which Petitioner generally denied any culpability. (Reply, Doc. 16, Exhibit AE, DR Number 2010 01250627 at 14-15.) Assuming that is the video to which Petitioner refers, his presence during the recording would make the exculpatory nature of the video known to him.

Moreover, Petitioner does not contend that the videotapes were not previously discoverable. Indeed, he argues that their existence was disclosed in the police reports. Petitioner does not suggest that the police reports were not previously known, or that something additional was required for Petitioner to earlier, through reasonable diligence discern that they had not been disclosed.

Accordingly, Petitioner is not entitled to the application of the delayed start under § 2244(d)(1)(D), and the finality of his conviction marks the commencement of his habeas limitations period.

### c) Conclusion re Commencement

Therefore, Petitioner's one year began running on July 30, 2013 and without any tolling expired on July 29, 2014.

### 3. Timeliness Without Tolling

Petitioner's Petition (Doc. 1) was filed on August 29, 2016.

However, the Petition is dated August 22, 2016. "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v.*

*Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Apart from the date of the Petition, Petitioner proffers nothing to suggest that his Petition was delivered to prison officials for mailing, or that it was delivered prior to its filing date. Because it would be reasonable to assume that Petitioner did deliver his petition to prison officials for mailing, and to assume that it was done prior to the filing date, and because it does not affect the outcome, the undersigned presumes (in Petitioner's favor) that his Petition was delivered to prison officials for mailing on the date it was signed, and that it should be deemed "filed" as of that date.

As determined in subsection (1) above, without any tolling Petitioner's one year habeas limitations period expired no later than July 29, 2014, making his August 22, 2016 Petition over 2 years delinquent.

### 4. <u>Statutory Tolling</u>

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

**<u>Properly Filed</u>** - Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed." "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002).

If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication wehther it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing. In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id*. at 1091.

*Id*. at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely. Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings. *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**Application to Petitioner** - Petitioner's limitations period commenced running on July 30, 2013. Petitioner's First PCR proceeding was commenced on March 3, 2015, when he filed his PCR Notice (Exhibit H). Because it does not affect the outcome, the undersigned presumes for purposes of this Report & Recommendation that Petitioner delivered that PCR Notice to prison officials for mailing on January 30, 2015, the date of his signature, and that it should be deemed filed as of that date. Even so, this filing

results in no tolling because his habeas limitations period had expired over nine months before, on July 29, 2014.

Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner has no statutory tolling resulting from his PCR proceeding.

Petitioner notes in his Reply that he previously filed a federal habeas petition. (Reply, Doc. 16 at 6.) Indeed, on May 16, 2013, before the commencement of his habeas limitations period, Petitioner filed a "Motion for Relief from Judgment" and on June 5, 2013 a Petition for Writ of Habeas Corpus in *Ishan v. Lunder*, CV-13-8126-PCT-JAT-JFM. (*Lunder* at Docs. 1, 3.) The action was ultimately dismissed based on Petitioner's failure to file an adequate petition and failure to comply with the Court's orders. (*Id.* at Order 3/13/14, Doc. 33.) However, tolling under § 2244(d)(2) does not extend to federal petitions. *Duncan*, 533 U.S. 167.

Consequently, Petitioner is not entitled to any equitable tolling, and his habeas petition was over 27 months delinquent.

5. **Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations

10

omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.

Petitioner does make various arguments regarding the pendency and dismissal of his earlier federal habeas petition, albeit in connection with his reply on the procedural default defense. (*See e.g.* Reply, Doc. 16 at 19 (citing *Walters v. McCormick*, 122 F.3d 1172, 1174 n.1 (9th Cir. 1997).)  Petitioner's reference to *Walters* is unavailing.

In *Walters*, the federal court had dismissed an earlier habeas petition based upon an erroneous conclusion that the petitioner's state remedies were not barred, but the state limitations period expired while the matter was under consideration by the federal court. The second habeas court concluded that it could reach the merits of the procedurally barred claims, citing *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). Here, the dismissal of Petitioner's earlier habeas petition was not based on any such misunderstanding.

Further, *Walters* did not address the statute of limitations, but instead an exhaustion defense, and did so in a pre-AEDPA case where the courts retained discretion to address unexhausted claims. Moreover, *McCleskiey*, on which *Walters* relied, was a pre-AEDPA case, applying the court's abuse of the writ doctrine. "AEDPA, however, replaced the abuse-of-the writ doctrine articulated in *McCleskey*." *United States v. Roberson*, 194 F.3d 408, 411 (3d Cir. 1999).

Here, there was no similar prejudice to Petitioner's state proceedings from any delay resulting in the pendency of his earlier federal petition. Moreover, Petitioner's failure to articulate a claim and failure to prosecute in his earlier proceeding would not evidence the kind of external impediment or diligence required for equitable tolling.

### 6. **Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013). To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.* at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes several bald assertions of his actual innocence, referencing the videotape. (*See e.g.* Reply, Doc. 16 at 9.) But, as noted by Respondents (Answer, Doc. 14 at 10),, Petitioner fails to clarify why the videotape might be exculpatory. To the extent that it merely consists of Petitioner's self-serving denials of culpability in his post-arrest interview, it would not constitute the kind of credible evidence upon which a claim

12

of actual innocence may rest. "To meet this standard, [the Petitioner] must first furnish 'new reliable evidence ... that was not presented at trial.'" *Griffin v. Johnson,* 350 F.3d 956, 961 (9th Cir. 2003) (quoting *Schlup*, 513 U.S. at 324). A petitioner's uncorroborated and self-serving protestation of innocence does not bear any of the hallmarks of reliability suggested by *Schlup*. *See Schlup*, 513 U.S. at 324 ("reliable evidence" includes "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence")

**7.** **Summary re Statute of Limitations**

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on July 30, 2013 and expired on July 29, 2014, making his August, 2016 Petition over 2 years delinquent. Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay. Consequently, the Petition must be dismissed with prejudice.

**B.** **OTHER DEFENSES**

Because the undersigned concludes that Petitioner's Petition is plainly barred by the statute of limitations, Respondents other defenses are not reached.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges

detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

### V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed August 29, 2016 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of

Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: April 25, 2017

16-2918r RR 17 04 12 on HC.docx

James F. Metcalf
United States Magistrate Judge